IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| UMBANET, INC.,<br>　　*Plaintiff*,<br><br>v.<br><br>EPSILON DATA MANAGEMENT, LLC,<br>　　*Defendant*. | CASE NO. 2:16-CV-682-JRG |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Epsilon Data Management, LLC's ("Epsilon") Motion to Dismiss for Failure to State a Claim (Dkt. No. 26), arguing that the asserted patents are invalid under 35 U.S.C. § 101, and Plaintiff Umbanet, Inc.'s ("Umbanet") Motion for Summary Judgment (Dkt. No. 38) seeking to foreclose and dispose of Epsilon's § 101 defenses. Having considered the motions and for the reasons set forth below, Epsilon's Motion is **GRANTED** as to U.S. Patent No. 7,444,374 ("the '374 Patent") and both motions are **DENIED** as to U.S. Patent No. 7,076,730 ("the '730 Patent").

## I.  BACKGROUND

Umbanet asserts that Epsilon infringes the '730 Patent and the '374 Patent (collectively, the "Patents-in-Suit"). (Dkt. No. 1.) These patents both generally relate to sending and receiving email messages. The '730 Patent was filed in 1998 and the '374 Patent was filed in 2000.

### A.  The '730 Patent

The '730 Patent purports to improve on existing email technology by making it easier to send non-text portions of a message, such as a picture or spreadsheet file, along with an email. As

1

the '730 Patent acknowledges, email programs at the time the '730 Patent was filed already allowed users to send non-text portions of a message along with the message itself as an "attachment." '730 Patent, 1:45–48. This process, however, required the recipient to "have a program capable of reading (opening) the file." *Id.* at 2:19–20. "For example, if one attaches a spreadsheet file to an email message, the receiver of the file must have a spreadsheet program in order to open the file." *Id.* at 2:20–23. In addition, the recipient also needed a compatible operating system. *Id.* at 2:32–37.

Rather than including non-text portions of a message as an attachment, the '730 Patent provides for "a single seamless environment for authoring, reading, and emailing a variety of different types of documents." *Id.* at 4:25–30. This environment includes various "authoring components." *Id.* at 3:27-52. Using these authoring components, a user can create non-text portions of a message within the email environment itself. *Id.* For example, the '730 Patent discloses an authoring component for creating a "spreadsheet . . . display[ing] a grid and include[ing] formula creation tools as well as formatting tools." *Id.* at 3:40–44. The advantage of this approach is that the recipient can open the spreadsheet file even if they do not have an otherwise compatible program or operating system. *Id.* at 12:22–31 ("When the message is received . . . [t]he receiver of the message does not have to download any file, find any attachment, execute any decoders, or launch any spreadsheet program to view/edit the spreadsheet . . . .").

Both parties agree that Claim 1 and Claim 19 are representative of the '730 Patent. Claim 1 recites:

> 1. An electronic mail client embodied in an executable computer-readable medium, comprising:

a) a plurality of authoring and reading components, a first of said plurality of authoring components for creating a representation of a document including an other than text portion and for creating the other than text portion of the document;

b) encoding means for automatically encoding said representation created with said authoring components into an Internetcompatible email message; and

c) decoding means for automatically decoding said representation encoded by said encoding means, wherein said encoding means and said decoding means communicate bidirectionally with said authoring components.

**B. The '374 Patent**

The '374 Patent, which is a continuation of the '730 Patent, describes technology generally similar to the '730 patent with the addition of controlling the access to certain messages based on the "role" of the user receiving the message. '374 Patent, 3:63–4:7.[1]

Both parties agree that Claim 11 and Claim 16 are representative of the '374 Patent. Claim 11 recites:

11. An electronic mail client system, comprising:

a) a plurality of authoring/reading components for creating and viewing representations of information;

---

[1] Although the '374 Patent is a continuation of the '730 Patent, with a largely identical specification, the claims of the '374 Patent are directed to different subject matter.

b) encoding means for automatically encoding representations created with said authoring/reading components into an Internet compatible email message; and

c) decoding means for automatically decoding said representations encoded by said encoding means, wherein at least one of said authoring/reading components is responsive to a role mode encoded in an email message whereby said role mode determines how much information in said email message will be displayed.

## II. LEGAL STANDARDS

### A. Motions to Dismiss

A motion to dismiss is appropriate when a complaint fails to state a plausible claim for relief even where all well-pleaded facts are accepted as true and viewed in the light most favorable to the plaintiff. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, (2007). Such a motion may dispose of claims for patent infringement if the patent is invalid under 35 U.S.C. § 101. *See, e.g., Voxathon LLC v. Alpine Elecs. of Am., Inc.*, No. 2:15-CV-562-JRG, 2016 WL 260350, at *5 (E.D. Tex. 2016).

### B. Motions for Summary Judgment

A motion for summary judgment is appropriate "only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1369 (Fed. Cir. 2006) (citing Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). As with a motion to dismiss, "the § 101 inquiry may appropriately be resolved on a motion for summary judgment." *Id.*

### C. Claim Construction

"Where it is clear that claim construction would not affect the issue of patent eligibility, there is no requirement that the court go through that exercise before addressing the eligibility issue." *Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols.*, No. 2:15-CV-1559-WCB, 2016 WL 2742379, at *6 (E.D. Tex. 2016) (Bryson, J.) (citing *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1274 (Fed. Cir. 2012)); *see also Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714–15, 717 (Fed. Cir. 2014) (concluding, "[w]ithout purporting to construe the claims," that claims were directed to an abstract idea while affirming a motion to dismiss). However, in some cases "claim construction is helpful to resolve the question of patentability under § 101." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1311 (Fed. Cir. 2016).

### D. Patent Eligible Subject Matter

"Laws of nature, natural phenomena, and abstract ideas are not patentable." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70 (internal quotation marks and brackets omitted). The Supreme Court has articulated a two-step test for "distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent eligible applications of those concepts." *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) (citing *Mayo*, 566 U.S. at 75–78).

The first step of the *Mayo/Alice* framework requires a court to determine if the claims, "considered in light of the specification . . . [and] as a whole," are "directed to excluded subject matter." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). There is no bright line rule that guides this analysis. Instead, the Federal Circuit and the Supreme Court have "found it sufficient to compare claims at issue to those claims already found to be directed to an abstract

idea in previous cases." *Id.* at 1335. For software patents, the critical question is "whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea." *Id.*

If the claims are directed to ineligible subject matter, then the court "search[es] for an 'inventive concept,' or some element or combination of elements sufficient to ensure that the claim in practice amounts to 'significantly more' than a patent on an ineligible concept." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014) (quoting *Alice*, 134 S. Ct. at 2353); *see also Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) ("[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces.").[2]

### III. DISCUSSION

**A. '730 Patent**

In approaching the first step of the *Mayo/Alice* framework, the Court begins by "compar[ing] claims at issue [here] to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1335.

Epsilon argues that *Intellectual Ventures I LLC v. Capital One Fin. Corp.,* 850 F.3d 1332, 1342 (Fed. Cir. March 7, 2017) controls. In that case, the relevant patent taught enabling users to

---

[2] In resolving whether a claim includes an abstract idea or inventive concept, a court may necessarily have to determine that some element of a claim recites well known concepts. This is appropriate even where the parties dispute whether an issue is well-known, for purposes of summary judgment, or where plaintiff has alleged that a concept was inventive, for purposes of a motion to dismiss. *See, e.g., Network Apparel Grp., LP v. Airwave Networks Inc.*, No. 6:15-CV-00134, 2016 WL 4718428, at *5 (W.D. Tex. 2016) (concluding that "there is an abundance of legal precedent that allows courts to make factual findings and general historical observations on a § 101 determination" at the motion to dismiss stage and collecting cases); *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1325 (Fed. Cir. 2016) (same but on summary judgment); *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1270 (Fed. Cir. 2016) ("While Affinity criticizes the magistrate's making factual findings on a motion for judgment on the pleadings, the practice of taking note of fundamental economic concepts and technological developments in this context is well supported by our precedents.").

6

"view and update XML documents in different formats" and "manipulate the data and perform actions without programming skills." *Id.* at *4–5. The Federal Circuit reasoned that the underlying concept described by such patent was "directed to the abstract idea of collecting, displaying, and manipulating data." *Id.* at *5. In particular, the Federal Circuit criticized the "results-oriented" approach that the claims took in describing the invention. *Id.* at *6, 8. By contrast, Umbanet relies heavily on *Enfish*, in which the relevant patent also related to displaying and manipulating data and yet was not directed to an abstract idea. 822 F.3d at 1332–32, 1336. There, the Federal Circuit concluded that the claims "recited . . . a specific type of data structure" and "a specific implementation." *Id.* at 1339.

In light of *Enfish* and *Intellectual Ventures*, the Court has determined that it is premature to resolve whether the claims of the '730 Patent are directed to ineligible subject matter. For example, claim construction may limit the claims of the '730 Patent to a sufficiently "specific implementation" so as to survive § 101.[3]

### B. '374 Patent

#### (i) *Mayo/Alice* Step 1

Once again, the Court begins by "compar[ing] claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1335.

---

[3] The Parties here also dispute whether certain claims of the '730 Patent invoke § 112(6). (Dkt. No. 55-1 at 16.) Resolving these disputes will further clarify the similarities between the claims of the '730 Patent, the asserted claims in *Enfish* (some of which were construed as means-plus function claims), and the asserted claims in *Intellectual Ventures* (none of which were means-plus function). *See also Uniloc USA, Inc. v. AVG Techs. USA, Inc.*, No. 216CV00393RWSLEAD, 2017 WL 1154927, at *4 (E.D. Tex. Mar. 28, 2017) ("Generally, means-plus-function claims have a narrower scope than non-means-plus-function claims.").

The asserted claims of the '374 Patent are essentially directed to providing selective or particularized access to an email.[4] '374 Patent, 18:38–55 ("[O]ne mode causes the [email] message to be displayed . . . another mode causes the [email] to be displayed with only a subset of the information in the message visible . . . .").

Courts have consistently declared similar claims to be abstract. *Preservation Wellness* is an instructive example. There, Judge Bryson concluded that claims directed to "computerized systems for maintaining patient medical records so that the records are remotely accessible by physicians and patients for reading and editing, with certain records accessible only to the physician" were abstract. *Pres. Wellness*, No. 2:15-CV-1559-WCB, 2016 WL 2742379, at *7 (collecting cases). This type of selective access to information based on an individual's role - as a patient or a doctor - is indistinguishable from the concept underlying the '374 Patent.

Umbanet argues, however, that these cases are inapposite because the '374 Patent "include[s] email client limitations which . . . satisfy § 101 . . . ." (Dkt. No. 38 at 27.) That same argument was squarely rejected in *Intellectual Ventures*. Taking a generally abstract idea, such as enabling selective access to a message, and limiting it to an "email client" alters the "field of use," but it cannot "render an otherwise abstract concept any less abstract." *Intellectual Ventures,* 850 F.3d at 1340. Further, Umbanet argues that *Preservation Wellness* in particular is distinguishable because the '374 Patent "allows a single email to be sent to multiple recipients with different material displayed to each recipient." (Dkt. No. 38 at 27.) Such a distinction makes no difference here. The underlying concept, and the conclusion that such concept is abstract, is the same

---

[4] Although the '374 Patent also includes language that may invoke § 112(6), "the mere presence of means plus function terms does not require a deferred ruling on validity under § 101." *Landmark Tech., LLC v. Assurant, Inc.*, No. 6:15-CV-76-RWS-JDL, 2015 WL 4388311, at *3 (E.D. Tex. 2015). In light of the breadth of cases finding similar claims to be abstract and without an inventive concept, the Court concludes that claim construction is not necessary for the '374 Patent.

regardless. *See, e.g., Ultramercial*, 772 F.3d at 715–16 (providing access to media content based on whether user had viewed advertisement was abstract); *Smartflash LLC v. Apple Inc.*, No. 2016-1059, 2017 WL 786431, at *4 (Fed. Cir. Mar. 1, 2017) ("[T]he asserted claims are directed to the abstract idea of conditioning and controlling access to data . . . ."). Ultimately, the asserted claims of the '374 Patent cannot be meaningfully distinguished from these previous cases in which similar claims were found to be directed to an abstract idea.

### (ii) *Mayo/Alice* to Step 2

Having concluded that the asserted claims of the '374 Patent are directed to an abstract idea, the Court next considers whether they recite an "inventive concept" that "'transform[s] the nature of the claim[s]' into a patent-eligible application." *Alice*, 134 S. Ct. at 2355. The only arguably inventive concept in the asserted claims of the '374 Patent, which forms the core of Plaintiff's argument here, involves the step of conditioning access to parts of an email message according to the "role" of the recipient. (*See* Dkt. No. 38 at 9 ("[T]he claimed solution . . . eliminated the need for drafting multiple emails [and is] . . . inventive and novel."")).[5]

However, the general idea of providing access to information according to a characteristic about the recipient or viewer of that information was well-known before the '374 Patent was filed. For example, as Epsilon argues, a bank may "release[] confidential financial information to the correct account holder and den[y] access . . . to [others]." (Dkt. No. 26 at 18.) The bank may also release different parts of that record to different individuals based on their role as the account holder, who would get full access, an employer, who may get information about the associated account number, or a stranger, who would likely get no access. Such a process is necessary in any

---

[5] The other parts of the asserted claims cover, generally, sending and receiving email messages, which even the '374 Patent acknowledges as being well known. '374 Patent, 1:30-34 ("In recent years electronic mail ('email') has become widely used . . . .").

9

context where multiple individuals have varied levels of access to information. *See, e.g., Pres. Wellness*, No. 2:15-CV-1559-WCB, 2016 WL 2742379 at *3–4 (describing a system for accessing a record by a patient or a doctor); Exec. Order No. 12,958, 60 Fed. Reg. 19,825 (Apr. 17, 1995) (defining "a uniform system for classifying . . . national security information").[6] Moreover, applying that process to an email message does not "transform" the abstract idea underlying the '374 Patent into one for which a patent may be granted. *See* 35 U.S.C. § 101; *Intellectual Ventures*, 850 F.3d at 1342 (concluding that claims did not describe an inventive concept where the abstract idea was recited "using generic computer components and conventional computer data processing activities"); *A Pty Ltd. v. Facebook, Inc.*, 149 F. Supp. 3d 732, 739 (W.D. Tex. 2016) (rejecting claims relating to email technology as lacking an inventive concept because they merely "address[ed] a long-standing problem . . . in a computer setting").

## IV. CONCLUSION

For the reasons set forth above, Epsilon's Motion to Dismiss (Dkt. No. 26) is **GRANTED** with respect to the '374 Patent. The '374 Patent is held to be ineligible for patent protection under 35 U.S.C. § 101. Epsilon's Motion to Dismiss is **DENIED** in all other respects without prejudice to refile as a motion under Federal Rule of Civil Procedure 56 after claim construction. Umbanet's Motion for Summary Judgment (Dkt. No. 38) is **DENIED**. However, Umbanet's motion may also be refiled after claim construction as to the '730 Patent.

**So ORDERED and SIGNED this 18th day of April, 2017.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[6] Executive Order 12,598 has since been superseded by Executive Order 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009).